UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MR. KEVIN WALKER,
                    PLAINTIFF

          -VS-

JOON KIM, ACTING U.S. ATTORNEY
KARIN PORTLOCK, AUSA
JONATHAN REBOLD, AUSA
ANDREW ADAMS, AUSA
JORDAN L. ESTES, AUSA
AMANDA KRAMER, AUSA
DINA McLEOD, AUSA
FRANK J. BALSAMELLO, AUSA
JESSICA LONERGAN, AUSA
JARED LENOW, AUSA
HADASSA WAXMAN, AUSA
DANIEL CHURLA, NYPD
MICHAEL McCREADY,
STEVEN ST. HILAIRE, NYPD
JOANNE BECK, ATF
KEITH SMITH NYPD/ATF
JASON ALLISON, ATF

**18 CV 4090**

CIVIL RICO
18 U.S.C 1962
42 U.S.C 1983
18 U.SC. 1951

I. PLAINTIFFS

1. MR. KEVIN WALKER, PRO-SE
   #75832-054
   METROPOLITAN CORR. CENTER
   150 PARK ROW
   NEW YORK, N.Y. 10007

2. All OTHERS CONCERNED

II. DEFENDANTS

1. JOON H. KIM
   ACTING UNITED STATES ATTORNEY
   SOUTHERN DISTRICT OF N.Y.
   1 ST. ANDREWS PLAZA
   NEW YORK, N.Y. 10007

2. KARIN PORTLOCK, AUSA
   UNITED STATES ATTORNEY OFFICE
   SOUTHERN DISTRICT OF NY.
   1 ST. ANDREWS PLAZA
   NEW YORK, N.Y. 10007

CONT'

7. DINA MCLEOD, AUSA
UNITED STATES ATTORNEY OFFICE
SOUTHERN DISTRICT OF N.Y.
1 ST. ANDREWS PLAZA
NEW YORK. NY. 10007

8. FRANK J. BALSAMELLO, AUSA
UNITED STATES ATTORNEY OFFICE
SOUTHERN DISTRICT OF N.Y.
1 ST. ANDREWS PLAZA
NEW YORK. NY. 10007

9. JESSICA LONERGAN, AUSA
UNITED STATES ATTORNEY OFFICE
SOUTHERN DISTRICT OF NY
1 ST. ANDREWS PLAZA
NEW YORK. NY. 10007

10. JARED LENOW, AUSA
UNITED STATES ATTORNEY OFFICE
SOUTHERN DISTRICT OF N.Y
1 ST. ANDREWS PLAZA
NEW YORK. NY. 10007

CONT.

3. JONATHAN REBOLD, AUSA
   UNITED STATES ATTORNEY OFFICE
   SOUTHERN DISTRICT OF N.Y
   1 ST. ANDREWS PLAZA
   NEW YORK. N.Y. 10007

4. ANDREWS ADAMS, AUSA
   UNITED STATES ATTORNEY OFFICE
   SOUTHERN DISTRICT OF N.Y.
   1. ST. ANDREWS PLAZA
   NEW YORK. NY. 10007

5. JORDAN L. ESTES, AUSA
   UNITED STATES ATTORNEY OFFICE
   SOUTHERN DISTRICT OF N.Y
   1 ST. ANDREWS PLAZA
   NEW YORK. N.Y. 10007

6. AMANDA KRAMER, AUSA
   UNITED STATES ATTORNEY OFFICE
   SOUTHERN DISTRICT OF N.Y
   1 ST. ANDREWS PLAZA
   NEW YORK. NY. 10007

Cont

11. HADASSA WAYMAN, AUSA
    UNITED STATES ATTORNEY OFFICE
    SOUTHERN DISTRICT OF N.Y.
    1 ST. ANDREWS PLAZA
    NEW YORK. NY. 10007

12. DANIEL CHURLA, NYPD
    NEW YORK CITY POLICE DEPT.
    1 POLICE PLAZA
    NEW YORK. NY. 10007

13. MICHAEL McCREADY, NYPD
    NEW YORK CITY POLICE DEPT
    1 POLICE PLAZA
    NEW YORK  NY. 10007

14. STEVEN ST. HILAIRE, NYPD
    NEW YORK CITY POLICE DEPT.
    1 POLICE PLAZA
    NEW YORK. NY. 10007

CONT

15. JOANNE BECK, ATF

16. KEITH SMITH,
    NEW YORK CITY POLICE DEPT.
    1 POLICE PLAZA
    NEW YORK . N.Y. 10007

17. JASON ALLISON, ATF

## III. JURISDICTION

1) PLAINTIFF AVERS ON INFORMATION
AND BELIEF, AND UPON REASONABLE
INVESTIGATION AND RESEARCH THAT

FEDERAL RICO (RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ACT) LAW 18 USC § 1962 (c), DO NOT FRUSTRATE THE GOALS OF ANY LAW SUIT REGULATED IN THIS STATE, AND FURTHER, THAT THE SOUTHERN DISTRICT OF NEW YORK HAS JURISDICTION IN THIS MATTER:

    i - FEDERAL DISTRICT COURT HAS JURISDICTION BY STATUTE UNDER;

- 18 USC § 1962 (c)
- 28 USC § 1331
- 42 USC § 1983
- 18 USC § 1951 (b)(3)

2) BASED ON THE PROCEEDINGS, THE ALLEGATIONS CONTAINED HEREIN ALSO CONTAINS MATTERS WHICH FALLS UNDER 18 USC § 1951 (b)(3) OF THE HOBBS ACT, WHICH SPECIFICALLY FALLS UNDER FEDERAL JURISDICTION.

3) ALL THE PROCEEDINGS LEAVES THE PURSUIT OF JUSTICE POSSIBLE ONLY WITHIN THE JURISDICTION OF THE SOUTHERN

DISTRICT OF NEW YORK.

4) THERE IS RELEVANT FEDERAL LAWS REGARDING PATTERNS OF RACKETEERING ACTIVITY, RICO; AND SPECIFICALLY 18 USC § 1962(c). ALSO, WITH REGARDS TO BRIBERY AND EXTORTION, AS WELL AS FALSE ARREST, ABUSE OF LEGAL PROCESS, OBSTRUCTION OF JUSTICE, INTIMIDATION OF WITNESSES, RETALIATION AGAINST WITNESSES, INFLUENCING PREJURIOUS TESTIMONY, 18 USC § 1962(c), 18 USC § 1951 (b)(3), 42 USC § 1983, AND 18 USC § 201. THEREFORE, THE MATTERS HEREIN SHOULD BE CONSIDERED ONLY WITHIN THE BOUNDS OF FEDERAL LAW.

## IV. VENUE

5) THE SOUTHERN DISTRICT COURT OF NEW YORK IS THE ONLY APPROPRIATE VENUE IN THIS MATTER:

    1. PLAINTIFF HAS RESIDED IN NEW YORK CITY FOR LONGER

THAN (3) YEARS, NEW YORK
CITY LIES WITHIN THE
SOUTHERN DISTRICT OF NEW
YORK.

2- ANY CHANGE OF VENUE TO
A DIFFERENT DISTRICT FOR
WHATEVER REASON WOULD CAUSE
ECONOMIC HARDSHIP, PHYSICAL
DISTRESS AND POSSIBLE
PHYSICAL INJURY TO PLAINTIFF
SO THAT THIS CASE COULD
NOT BE LITIGATED; AND
WOULD NEGATE UTTERLY, THE
PURSUIT OF JUSTICE

V.  STANDING AND PLAINTIFF's RIGHT
    TO RELIEF:

6) THE PLAINTIFF AND All CONCERNED
HAVE & STANDING IN THIS MATTER, AND
IN THE SOUTHERN DISTRICT COURT OF
NEW YORK.
            1. PLAINTIFF RESIDES IN NEW

YORK CITY FOR OVER (3) YEARS,
NEW YORK CITY LIES WITHIN
THE SOUTHERN DISTRICT OF
NEW YORK.

7) THIS IS A MATTER WHICH DEVOLVES
UPON THE TORTUROUS INTERFERENCE
BY THE DEFENDANTS IN (3) THREE
RESPECTS:

      1. THE TORTUROUS INTERFERENCE
      WITH THE LEGAL AND ADMINI-
      STRATIVE DUE PROCESS OF THE
      CRIMINAL JUSTICE SYSTEM, GENERALLY
      AND SPECIFICALLY HARMING
      PLAINTIFF BY INCENTIVELY HAVING
      OFFICERS AND AGENTS AS WELL AS
      CO-OPERATING WITNESSES PERJURE
      THEMSELVES TO GET A CONVICTION,

      2. DURING THE COURSE OF VIOLATING
      THE RICO, THEY ARE USING WHAT
      WILL OTHERWISE BE A LAWFUL
      INSTRUMENT (I.E. 5K1.1 LETTER,

Rule 35(b) AND 3553(e))
IN AN UNLAWFUL MANNER,
IN DOING SO, THEY ARE A
"ENTERPRISE" COMMITTING
CRIMINAL ACTS FOR THE PURPOSE
OF OBTAINING CONVICTIONS;

3. IN FURTHERANCE OF THIS
RICO CONSPIRACY, THEY ARE
COMMITTING FALSE ARREST,
UNREASONABLE SEARCHES, OB-
STRUCTION OF JUSTICE, INFLUENCING
WITNESSES TO PERJURE THEMSELVES,
NOT CORRECTING WITNESSES THEY
KNOW PERJURED THEMSELVES, BRIBING
WITNESSES AND EXTORTING WITNESSES
FOR TESTIMONIES DURING THE
COURSE OF ITS GENUINE PATTERNS
OF RACKETEERING ACTIVITIES.

8) UNDER DEFENDANTS CONTINUING DECEIT,
ABUSE OF LEGAL AND ADMINISTRATIVE DUE
PROCESS AND SUCH TORTUROUS INTERFERENCE
AND EGREGIOUS PROSECUTION PLAINTIFF

WITHERS AND HAVE BEEN LEFT NO
CHOICE BUT TO SEEK JUSTICE WITHIN
FEDERAL JURISDICTION ON GROUNDS OF
DEFENDANTS RACKETEERING ACTIVITIES.

## VI. STATEMENT OF FACTS

9) ON OR ABOUT OCT. 2014, KEVIN WALKER
(HEREON "PLAINTIFF"), WAS RELEASED FROM
NEW YORK STATE DEPARTMENT CORRECTION (NYSDOC)
THE FOLLOWING WEEK OF PLAINTIFF'S RELEASE
HE SECURED A JOB AS HEAD OF SECURITY
FOR A CLUB (AFTERHOURS) LOCATED IN THE
BRONX AREA.

10) FROM OCT 2014 TO APRIL 2015, PLAINTIFF
WORKED AT VARIOUS CLUBS IN THE BRONX AND
HARLEM AREA OF NEW YORK CITY. PLAINTIFF WORKED
EVERYDAY FROM 12 AM TO 8 AM UNTIL AROUND
JANUARY 2015 WHEN THE DAYS CHANGED TO
WEDNESDAY TO SUNDAY. PLAINTIFF'S PRIMARY CLUB
WAS LOCATED AT 151ST CEDAR LANE, BRONX
NEW YORK.

11) ON OR ABOUT FEB. 2015, AROUND
9-10 AM THAT MORNING, FEDERAL AND LOCAL

POLICE WAS FOLLOWING TYROME WALKER FOR AN ALLEGED STRING OF COMMERICAL ROBBERIES WITH A WARRANT FOR HIS ARREST. TYROME WALKER STOPS AT 138th — 139st IN FIFTH AVENUE IN FRONT OF A DAYCARE CENTER IN WHICH HIS WIFE WORKED. WHILE WAITING FOR HIS WIFE TO RETURN TO HIS VEHICLE (A BLACK 2DR HONDA) FEDERAL AND LOCAL OFFICERS EFFECTUATED THE ARREST.

12) AFTER ABOUT 5 MINUTES OR SO TYROME WALKER WAS IN CUSTODY. HIS WIFE WHO WAS PRESENT, ASKED FEDERAL AGENTS WHY WAS HER HUSBAND BEING ARRESTED AND WASNT GIVEN ANY DIRECT ANSWERS. TYROME WALKER INFORMED HIS WIFE TO GET HIS PHONE OUT OF THE CAR, IN WHICH SHE DID AND WAS APPROACHED BY SERVAL FEDERAL OFFICERS AND WAS MADE TO GIVE THEM BACK TYROME'S PHONE (iPHONE 6) BY SERVAL THREATS OF BEING ARRESTED. SHE IMMEDIATELY GAVE THE PHONE BACK AND ASKED WHERE WAS THEY TAKING HER HUSBAND TO, AND TOLD

161ST COURTHOUSE. SHE WAS ALSO TOLD BY THESE AGENTS NOT TO FOLLOW THEM OR SHE TOO WILL BE ARRESTED.

13) AFTER GOING TO 161ST COURTHOUSE AND TRYING TO FIND HER HUSBAND SHE CALLED HIS BROTHER PLAINTIFF WHO TOLD HER TO COME GET HIM SO THE TWO COULD TRY AND FIND TYROME WALKER. AFTER A COUPLE OF HOUR THEY WAS UNSUCCESSFUL IN LOCATING TYROME WALKER. PLAINTIFF THEN DROVE TYROME WALKER'S WIFE HOME AND TOOK POSSESSION OF TYROME WALKERS VEHICLE (BLACK 2DR HONDA). PLAINTIFF IMMEDIATELY PARKED SAID VEHICLE BECAUSE VEHICLE WAS TO SMALL AND PLAINTIFF HAD A HARD TIME DRIVING.

14) IN THE DAYS TO COME, IT WAS A WAITING GAME TO SEE WHERE TYROME WAS LOCATED. ABOUT 2-3 DAYS LATER PLAINTIFF RECIEVES INFORMATION FROM TYROMES SON AND CHILDS MOTHER THAT HE WAS AT MDC-BROOKLYN FOR HOBBS ACT ROBBERIES. PLAINTIFF NOTIFIES TYROME

WIFE OF THE DEVELOPEMENTS IN WHICH SHE WAS ALREADY MADE AWARE OF BY TYROMES LAWYER GREGORY MORVILLO.

15) HIS WIFE STATED THAT THE LAWYER GREGORY MORVILLO TOLD HER "THEY HAVE NOTHING SUBSTANTIAL ON TYROME WALKER" AND HE (MORVILLO) WOULD BE TRYING TO GET HIM RELEASED. MORVILLO (LAWYER) THEN ASKED HER HOW LONG HAS TYROME HAD HIS BEARD? AND DO SHE HAVE PICTURES OF TYROME SPORTING HIS BEARD LAST MONTH, 6 MONTHS AGO OR MAYBE A YEAR AGO? SHE STATED YES AND WAS TOLD TO PRODUCE THESE PICTURES IMMEDIATELY. HIS WIFE ALSO GAVE MORVILLO (LAWYER) TYROME'S INSTAGRAM AND FACEBOOK IN-FORMATION WHERE (MORVILLO) COULD SEE FOR HIMSELF. HIS WIFE THEN CALLED PLAINTIFF AND EXPLAINED IN DETAILS THE ABOVE MENTIONED AND GAVE PLAINTIFF THE LAWYERS (MORVILLO) PHONE NUMBER.

16) PLAINTIFF CALLED TYROMES LAWYER (MORVILLO) AND WAS TOLD BY HIM THAT THEY HAVE THE WRONG GUY, THAT HE

WAS GOING TO PROVE BY WAY OF TYROME'S
INSTAGRAM AND FACEBOOK PHOTO'S THAT
TYROME ALWAYS HAD A FULL-BEARD. THEN
TOLD PLAINTIFF THAT HE KNEW THE ASSISTANT
UNITED STATES ATTORNEY ("AUSA", HEREIN)
PERSONALLY AND THAT SHE TOLD HIM (MORVILLO)
THAT SHE WOULD GIVE HIM (1) WEEK TO
PROVE THAT IT WAS NOT TYROME IN THE
SURVEILLANCE PHOTO'S, AND IF SO, SHE
WOULD RELEASE HIM. THEN MORVILLO (LAWYER)
STATED TO PLAINTIFF "TO BE CAREFUL, THEY
ARE LOOKING INTO YOUR NAME". PLAINTIFF
STATED "WHAT DO YOU MEAN?" MORVILLO (LAWYER)
STATED "I CANT TALK TO YOU WITHOUT
PERMISSION FROM TYROME, GET TYROME TO
GIVE ME PERMISSION AND I CAN TELL YOU
WHAT I'VE LEARNED".

17) ON OR ABOUT THE NEXT DAY OR
SO, PLAINTIFF AND TYROMES WIFE GOES TO
A BARBERSHOP IN HARLEM IN WHICH TYROME
WALKER WAS AT ON THE ALLEGED DAY OF
THE ROBBERIES. WE SPOKE WITH OWNERS
WHO STATED THAT HE WOULD SPEAK TO
INVESTIGATORS ON BEHALF OF TYROME WALKER

ON THAT SAME DAY TYROME WALKER
CALLS HIS WIFE ON HER PHONE AND
HIM AND PLAINTIFF SPEAKS FOR THE FIRST
SINCE HIS ARREST PLAINTIFF INFORMS
TYROME SOME OF WHAT HIS LAWYER (MORVILLO)
STATED TO HIM, AND INFORMED HIM THAT
THE BARBERSHOP OWNER STATED HE WILL
SPEAK TO INVESTIGATORS ON HIS BEHALF
(EXHIBIT "A" TYROME WALKER TRULINKS CALLS
AT MDC-BROOKLYN).

18) PLAINTIFF INFORMED TYROME WALKER
TO STAY OFF PHONE TALKING ABOUT ANYTHING
OF SUBSTANCE, TYROME STATED "HE KNOW", HE
ONLY TALKING TO HIS FAMILY." WE TALKED
FOR A LITTLE WHILE LONGER AND GOT OFF
PHONE. UNBEKNOWN TO PLAINTIFF, TYROME
AND HIS GIRLFRIEND BIENAH JENKINS
WAS ON THE PHONE TALKING ABOUT A
"PLAN" IN WHICH THEN HAD ALREADY
BE CONDUCTED BEFORE TYROMES ARREST.
(EXHIBIT "B", TYROME & BIENAH CALLS ON TRULINKS)

19) A FEW DAYS LATER BIENAH JENKINS
A PLAINTIFF HAD A CONVERSATION IN
WHICH BIENAH TOLD PLAINTIFF THAT THE

DEFENDANTS CHURLA AND MC CREADY
WAS AT HER AND TYROME'S APARTMENT
TO QUESTION HERE AND TO RETURN
All OF TYROMES PROPERTY (i.e. CREDIT
CARDS, WALLET, KEYS, COATS ETC...)(ALSO,
A PROCEDURE NEVER HEARD OF AFTER
ARREST, TO RETURN PROPERTY WITHOUT VOUCHER).
THEY (DEFENDANTS CHURLA AND MCCREADY)
ALSO WANTED THE VEHICLE BACK TO
SEARCH, 2DR BLACK HONDA.

20) BIENAH JENKINS THEN CALLED
PLAINTIFF AND INFORMED THAT THE DEFENDANTS
JUST LEFT, PLAINTIFF ASKED WHAT DID THEY
WANT? SHE STATED THEY ASKED HER
QUESTIONS ABOUT TYROME BEING OUT
ROBBING, DID SHE KNOW ABOUT THAT?
IN WHICH SHE STATED "NO". THEY (DEFENDANTS)
ALSO ASKED ABOUT CLOTHING OF TYROME'S,
AND SUPPOSED TO HAVE ASKED BIENAH
ABOUT PLAINTIFF, DID SHE EVER SEE PLAINTIFF
DRIVING THE 2DR HONDA, IN WHICH SHE STATED
SHE TOLD THE DEFENDANTS (CHURLA AND MCCREADY)
"NO". FROM THIS ALLEGED CONVERSATION
DEFENDANT CHURLA WENT TO SECURE A

WARRANT WITH PERJURIOUS AFFIDAVIT
THAT HE WAS TOLD BY BIENAH JENKINS
THAT "YOU DONT WANT TYROME, YOU WANT
HIS BROTHER KEVIN WALKER (PLAINTIFF)
WHO IS THE LEADER OF A ROBBERY
GANG"

21) IN ANOTHER CONVERSATION WITH
BIENAH JENKINS, SHE TOLD PLAINTIFF
THAT THE DEFENDANTS CHURLA AND
McCREADY KEEP CALLING HER ABOUT
THE VEHICLE AND THAT THEY MIGHT
HAVE TO CALL HER TO THE GRAND
JURY SINCE THE CAR WAS HERS. PLAINTIFF
TOLD BIENAH THAT THIS MIGHT BE
SCARED TACTICS AND FOR HER TO
CALL TYROMES LAWYER AND ASK HIM
WHAT TO DO. PLAINTIFF ASKED HER AGAIN
WHAT DID YOU SAY TO THEM AND WAS
TOLD "NOTHING". BIENAH STATED THEY
WANTED TO KNOW DID I KNOW TYROME
WAS ROBBING AND ABOUT HIS CLOTHES,
AND ALSO ASKED DID YOU (PLAINTIFF)
EVER DROVE THE CAR (2DR HONDA), I TOLD
THEM I NEVER SEEN YOU DRIVING THE

CAR AND THAT ME AND TYROME IS THE
ONLY PEOPLE WHO DRIVES THE CAR.
PLAINTIF THEN INFORMED HER THAT
HE WILL TAKE HER AND HIS WIFE
TO COURT FOR TYROMES COURT DATE.

22) PLAINTIF AND TYROME DISCUSS
HIS UPCOMING COURT DATE. PLAINTIFF
DRIVES TYROME'S WIFE TO COURT TO
MEET UP WITH TYROME'S GIRLFRIEND.
WHILE IN COURT TYROME'S WIFE GOES
OUT TO USE THE RESTROOM AND OFFICERS
(DONT KNOW IF ITS THE DEFENDANTS
CHURLA AND McCREADY) BUT THE OFFICERS
HAND BIENAH JENKINS A SUBPEONA
TO APPEAR AT THE GRAND JURY
THAT WEEK FOR TYROME WALKER.

23) TYROME CALLS PLAINTIF AND
TELLS HIM TO GIVE BIENAH HIS CAR, IN
WHICH PLAINTIF INFORMS HIM THAT SHE
WAS HANDED A SUBPEONA IN COURT AND
SHE DIDNT TELL YOU BUT YOU WANT ME
TO GIVE HER THE CAR? PLAINTIF GIVES
BIENAH JENKINS THE CAR A DAY OR
TWO LATER. BIENAH JENKINS ALSO GOES TO

THE GRAND JURY TO TESTIFY (SEE EXHIBIT "C", BIENAH JENKINS GRAND JURY TESTIMONY)

24) UNBEKNOWNST TO PLAINTIFF THAT TYROME AND BIENAH DISCUSS IN EXPLICIT DETAILS THE ARRAIGNMENT OF THEIR PLAN. ITS NOT VERBATIM BUT ITS IN SUBSTANCE AND PART:

TYROME - WHAT HAPPEN AT THE GRAND JURY

BIENAH - NOTHING — I TESTIFIED

TYROME - TO WHAT, BI?

BIENAH - I DONT WANT TO TALK ABOUT ON THIS PHONE TYROME...

TYROME - BI, YOU HAVE TO TELL ME WHAT YOU SAID

BIENAH - WHY YOU MAKING ME TALK ON THIS PHONE TYROME? I SAID ILL TELL YOU WHEN I SEE YOU

TYROME - YOU HAVE TO TELL ME WHAT YOU SAID, BI

BIENAH - I HATE YOU TYROME... YOU SO COMFORTABLE TALKING ON THIS PHONE

TYROME - YOU HATE ME, WHAT I
          DO?

BIENAH - I TOLD THEM YOU BE
         DRIVING THE CAR AND
         YOU TOLD ME TO REPORT
         THE CAR STOLEN CAUSE
         WE CAN PAY THE INSURANCE...

TYROME - YOU TOLD THEM WHAT?
         BI, WHY THE FUCK WOULD
         YOU TELL THEM THAT SHIT,
         THAT WAS A LIE BI. I
         TOLD YOU TO TELL THEM
         BOSCO (PLAINTIF) HAD THE
         CAR...

ITS MORE, BUT THEN TYROME STATES:
    TYROME - BI, DONT GET STUPID
             ON ME, I TOLD YOU THEY
             WAS GOING TO COME AT
             YOU LIKE THIS,

WHICH SHOWS THAT A PLAN HAS BEEN
HATCHED. TO HEAR IN FULL (SEE EXHIBIT
"D" BIENAH AND TYROME CALL ON TRULINKS
FEB 13 2015, THE DAY SHE WENT TO GRAND JURY)

25) AFTER THIS CONVERSATION TYROME WAS RELEASED AND CASE DISMISSED. TYROME AND PLAINTIFF SEE EACH OTHER ONLY FOR WORK (SECURITY) AT AN AFTERHOUR CLUB ON 150ᵗʰ-151ˢᵗ STREET CEDAR LANE, DIRECTLY ACROSS FROM SAM'S CLUB ON THE GRAND CONCOURSE. PLAINTIFF WAS AT THE CLUB UP UNTIL APRIL 2015 WHEN HE WAS ARRESTED ON OTHER CHARGES IN NEW JERSEY AND WAS BAILED OUT MAY 2015.

26) ON OR ABOUT MARCH 2016, RODNEY SHIRLEY IS ARRESTED BY ATF TASK FORCE EXECUTING A SEARCH AND ARREST WARRANT. UPON THE EXECUTION OF THIS ARREST & SEARCH WARRANT, ONE OF THE DEFENDANTS (JASON ALLISON) ASKED RODNEY SHIRLEY "WHERE THE GUNS AT"? RODNEY SHIRLEY STATED "I DONT HAVE THE GUN, BOSCO (PLAINTIFF) (PLEASE NOTE THAT BOSCO IS PLAINTIFF'S ALLEGED STREET NAME) GOT THE GUN. HE THREW IT IN THE SEWER" THE DEFENDANTS JOANNE BECK, JASON ALLISON AND STEVEN ST. HILAIRE PROCEEDED TO ENTER THE

Apartment to get the female occupants out in the hallway area in order to search Rodney's Room. After everyone was placed in hall-way. A video recorder taped them (Defendants Beck, Allison & St. Hilaire) entering the house and showed how it looked upon their arrival. The defendants film the pre-search and post search ( see exhibit "D" Rodney Shirley pre & post search video). Once the search was conducted they (Defendants) allowed everyone back in and escorted Rodney to the ATF office located in Bronx New York.

27) While in route to the ATF office Rodney summoned the defendants Beck, Allison & St. Hilaire to pull over on 145st Lenox Ave in Harlem, just before entering the 145st Bridge that crosses into the Bronx. Rodney informs the defendants the location of where plaintiff allegedly threw the gun in

THE SEWER, THE DEFENDANTS PULL OVER AND ASKED RODNEY WAS HE SURE? HE STATED "YES" AND A TEAM OF AGENTS WITH THE ESU (EMERGENCY SERVICE UNIT) AND EPA (ENVIRONMENTAL PROTECTION AGENCY) SUITED UP AND WENT INTO THE SEWER SYSTEM TO RETRIEVE THIS ALLEGED GUN THAT PLAINTIFF SUPPOSE TO HAD PUT THERE. THE SEWER WAS SEARCHED THOROUGHLY AND NO GUN FOUND (SEE EXHIBIT "E" POLICE REPORT OF RODNEY SHIRLEY'S ARREST)

28) RODNEY SHIRLEY WAS TAKEN TO ATF OFFICE FOR INTERROGATION BY DEFENDANTS BELK, ALLISON AND ST. HILAIRE. AT THE BEGIN OF THE INTERROGATION DEFENDANT ST. HILAIRE " WHY DONT YOU TELL US FROM YOUR PROSPECTIVE OF WHAT HAPPEN". RODNEY STATES THAT HE ONLY KNOWS ABOUT (i) ONE ROBBERY. THEN DEFENDANT ALLISON TALKS TO HIM ABOUT THE THINGS THEY TALKED ABOUT AT RODNEYS HOUSE. (BUT THERE IS NO DOCUMENTATION OF THIS CONVER-SATION EXCEPT THE SEWER ASPECT), NOW, DEFENDANT ST. HILAIRE FIRST TELLS RODNEY

TO TELL HIM WHAT HAPPEN IN HIS WORDS
BUT THE DEFENDANTS DONT DO THAT THEY
KEEP INTERJECTING AND LEADING HIS STORY.
AT ONE POINT DEFENDANT ALLISON TELLS
RODNEY "WE KNOW THIS IS OUT OF YOUR
CHARACTER, SO WE KNOW SOMEONE HAD
TO PUT YOU UP TO DO THIS". ANOTHER
TIME THEY TELL RODNEY WHO CAME TO
HIS HOUSE AFTER THE ROBBERIES
WHEN HE ALREADY TOLD THEM THAT,
"AFTER THE ROBBERIES EVERYONE WENT
THEIR OWN WAY". BASICALLY FINE TUNNING
HIS STORY TO FIT THE STORY THEY NEED.
RODNEY SWITCH UP HIS STORY TO MAKE
KYELL CLAY THE ROBBER AND HIMSELF
THE LOOK OUT, AGAIN DEFENDANTS BECK
ALLISON AND ST. HILAIRE DURING THE COURSE
OF THIS INTERVIEW IS LEADING RODNEY
TO SAY WHAT THEY NEED SAID. UP UNTIL
THAT POINT NO INDEPENDANT CORROBORATION
OF NOTHING RODNEY STATED (SEE EXHIBIT "F"
RODNEY SHIRLEY INTERVIEW)
      29) ON MARCH 30 2016, PLAINTIFF
WAS AT HIS RESIDENCE WHEN ATF
AND LOCAL NYPD SET-UP AT THE MC—

DONALDS WHICH IS (1) BLOCK AWAY FROM
PLAINTIFF'S HOUSE AT 4:30AM, LEAD BY
DEFENDANTS JOANNE BECK AND STEVEN
HILAIRE, TO EXECUTE AN ARREST WARRANT
ONLY. THIS ARREST WARRANT WAS SIGNED
BY A JUDGE ON MARCH 28. 2016. NO
SEARCH WARRANT WAS REQUESTED OR
ISSUED TO THESE DEFENDANTS. THE
DEFENDANTS BECK, ALLISON, ST. HILAIRE,
MCCREADY, AND KEITH SMITH, ALONG
WITH OTHER AGENTS NOT NAMED IN
THIS COMPLAINT SURROUNDED THE BUILDING
WAITING FOR PLAINTIFF TO EXIT THE
BUILDING. 5:30AM PASSES, 6:30AM PASSES,
7:30 AM PASSES, 8:30 AM PASSES, AROUND
9:30 DEFENDANT KEITH SMITH CALLS FOR
EXTRA UNITS AND DEFENDANT BECK
ORDERS EVERYONE TO GO TO THE
APARTMENT TO EFFECTUATE THE ARREST.
    30) DEFENDANTS BANG ON DOOR
WITH A BATTERING RAM, THEY HAVE
A PROTECTIVE SHIELD AND MILITARY
STYLE WEAPONS (MACHINE GUN) IT WAS
ABOUT 12-15 OFFICERS. AT THIS TIME

PLAINTIFF'S MOTHER WAS HOME WITH HER
GRANDCHILD WHO WAS 9-10 MONTHS OLD.
THE DOOR WAS ANSWERED IMMEDIATELY
AND THE OFFICERS STORMED THE APART-
MENT IN SEARCH OF PLAINTIFF WHO WAS
BROUGHT OUT VERY QUICKLY ABOUT 1-2
MINUTES AND WAS PLACED IN THE
HALLWAY AND GIVEN TO DEFENDANT
KEITH SMITH, WHO WALKED PLAINTIFF
DOWN THE HALLWAY ABOUT 10-15 FEET
AWAY FROM THE APARTMENT DOOR, MAYBE
A LITTLE FURTHER. WHILE STANDING THERE
DEFENDANT SMITH SEARCHED PLAINTIFF AND
TOOK OUT HIS POCKET PLAINTIFF'S WALLET.

31) ON SERVAL OCASSIONS PLAINTIFF
ASKED WHY WAS HE BEING ARRESTED
AND WAS TOLD "TO SHUT THE FUCK UP",
ASKED AGAIN AND WAS TOLD THE SAME
AND "TODAY YOU GRADUATE TO THE
BIG LEAGUES". THEN STATED " TODAY, IS
THE MOST IMPORTANT DAY OF YOUR LIFE."
THEN ALSO SAID "YOU'll FIND OUT WHEN
THE ARRESTING OFFICER COMES BACK
OUT. ALSO, STANDING THERE WAS A FEW

OFFICERS GETTING OFF THE ELEVATORS AND GOING INTO THE APARTMENT EVEN A OFFICER WITH A DOG WENT INTO THE APARTMENT. AT FIRST PLAINTIFF'S MOTHER WAS STANDING DOWN THE HALLWAY IN FRONT OF THE APARTMENT FOR ABOUT 5 MINUTES OR SO THEN WAS TAKEN BACK INTO APARTMENT LIVING ROOM AREA WHILE DEFENDANTS SEARCH THE APARTMENT IN THE GUISE OF A "PROTECTIVE SWEEP" WHICH TOOK 10-15 MINUTES FOR A SMALL APARTMENT AND PLAINTIFF SECURED IN THE HALLWAY.

32) AFTER ABOUT 10-15 MINUTES DEFENDANTS BECK AND ST. HILAIRE CAME OUT OF APARTMENT, AND PLAINTIFF ASKED WHY WAS HE BEING ARRESTED? HE WAS TOLD THEY WILL TELL ME WHEN WE GET TO STATION. DEFENDANT BECK READ OFF SOME OF MIRANDA, DEFENDANT ST. HILAIRE WAS POSITIONED SLIGHTLY BEHIND HER AND DEFENDANT ST. HILAIRE STATED "WHERE THE GUNS AND DRUGS AT"? PLAINTIFF STATED "WHAT GUNS AND DRUGS"? DEFENDANT ST.

HILAIRE STATED " DON'T WORRY ABOUT IT"
PLAINTIFF STATED "DON'T WORRY ABOUT IT"?
DEFENDANT ST. HILAIRE STATED " WE SEEN
YOU COME IN THE BUILDING LAST NIGHT
WITH THE BAG WITH THE GUN IN IT".
PLAINTIFF STATED SOMETHING TO THE EFFECT
OF " I DON'T HAVE NO GUN AND DRUGS
IN MY MOTHER HOUSE" DEFENDANT ST. HILAIRE
STATED "THEN LET US SEARCH YOUR ROOM"?
AT THE SAME TIME DEFENDANT BECK
STATES "DO YOU MIND IF WE SEARCH
YOUR ROOM"? PLAINTIFF STATED " GO AHEAD
AINT NO GUNS IN MY MOTHERS HOUSE.
DEFENDANT ST. HILAIRE STATED " DON'T WORRY
WE GOING TO SEARCH ANYWAY" A COUPLE
OF MINUTES OF BOTH DEFENDANTS COMING
INTO THE HALLWAY PLAINTIFF NOTICED IN
DEFENDANT ST HILAIRE'S HAND A SCANNER
AND (2) PHONES IN WHICH HE TIRED TO
HIDE BEHIND A POLICE PAD AND BEING
BEHIND DEFENDANT BECK.
     33) NOW, AFTER DEFENDANT ST. HILAIRE
STATED " DON'T WORRY WE GOING TO SEARCH
ANYWAY", A AGENT GOT OFF THE ELEVATOR

WITH A RED AND BLACK BOX WITH
A SNAKE AND T.V SCREEN ATTACHED
TO IT AND DEFENDANT ST. HILAIRE WENT
INTO THE APARTMENT WITH THE AGENT.
PLAINTIFF STOOD IN THE HALLWAY FOR
ABOUT ANOTHER 5-10 MINUTES BEFORE
DEFENDANT SMITH WAS TOLD TO
TAKE ME TO THE STATION. AT THE STATION
PLAINTIFF WAS PLACED IN A INTERVIEW ROOM
IN WHICH PLAINTIFF WAS QUESTIONED ABOUT
WHERE HE'S BEEN IN HIS VEHICLE AND
PEDIGREE INFORMATION. ALSO, IN THIS IN-
TERVIEW PLAINTIFF IS ASKED WHERE HE
WORKED IN BRONX? PLAINTIFF STATED
SOMETHING TO THE EFFECT OF "I USE
TO WORK UP THE BLOCK, I USE TO WORK
AT UM UM, ITS TWO CLUBS THERE YOU GOT
SAMS I USE TO WORK ON 151ST IN GRAND
CONCOURSE Right there, AND I USE TO
DO SECURITY AT ANOTHER SPOT UM ON
149th STREET." (SEE EXHIBIT "B" KEVIN
WALKER INTERVIEW MARCH 30.2016 AT 7:03)
NOW, THE BLOCK IN WHICH PLAINTIFF
WORKED ON WAS 160th - 151st Cedar LANE WHICH

IS DIRECTLY ACROSS FROM SAM'S.

34) THE NEXT DAY PLAINTIFF IS ARRAIGNED IN COURT AND REMANDED TO THE CUSTODY OF BOP/U.S MARSHALLS. PLAINTIFF IS ASSIGNED CJA COUNSEL MRS. LORRAINE GAULI-RUFO. AT THE FIRST MEETING PLAINTIFF INFORMS MS. RUFO THAT HE WILL BE FIGHTING THESE CHARGES BY WAY OF TRIAL. PLAINTIFF ALSO INFORM HER NOT TO WAIVE ANY OF PLAINTIFF RIGHTS AND OR AGREE TO ANY CONTINUANCE FOR INDICTMENT. ALL REQUEST WAS IGNORED BY THIS ATTORNEY WHICH STARTED THE BREAKDOWN OF LAWYER-CLIENT INTERACTION.

35) ON OR AROUND MAY 2016, PLAINTIFF WAS CALLED TO COURT FOR A SUPERCEEDING INDICTMENT AND THAT HE WAS BEING CHARGE WITH HIS BROTHER TYROME WALKER IN A SERIES OF HOBB ACTS FROM DEC.2014 TO FEB 2015. CHARGES THAT HAD ALREADY BEEN DISMISSED AGAINST HIS BROTHER TYROME EARLIER (FEB-MARCH 2015). PLAINTIFF ASKED MS RUFO (LAWYER) WHY WAS HE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MR. KEVIN WALKER,                          AFFIDAVIT
                    PLAINTIFF                   OF
          -VS-                             SERVICE

JOON KIM, ACTING U.S ATTORNEY et al.,
                    DEFENDANTS

        I, KEVIN WALKER, DECLARE UNDER
THE PENALTY OF PERJURY THAT THIS CIVIL
RICO (18 USC 1962) IS BEING HAND DELIVERED
TO THE PRO-SE OFFICE, AT 500 PEARL STREET,
NEW YORK, NY. 10007

DATED MAY 3. 2018              RESPECTFULLY SUBMITTED,
     NEW YORK N.Y.
                               Mr. Kevin B Walker
                                    #75832-054
                               Metropolitan Corr. Center
                                   150 Park Row
                               New York. N.Y. 10007
                                    PRO-SE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MR. KEVIN WALKER                              AFFIDAVIT
                    Plaintiff                    OF
            VS.                                SERVICE

JOON KIM , ACTING U.S ATTORNEY et al.,
                    DEFENDANTS
_____

     I, KEVIN WALKER, DECLARE UNDER THE
PENALTY OF PERJURY THAT THIS CIVIL RICO
IS BEING HAND DELIVERED TO THE PRO-SE
OFFICE, AT 500 PEARL STREET, NEW YORK,
NY. 10007, ON MAY 4th 2018.

DATED MAY 3 2018          RESPECTFULLY SUBMITTED,
    NY. NY                 MR. Kevin Walker
                               #75832054
                            PRO-SE

84) PLAINTIFF HAVE IN GOOD FAITH ATTEMPTED TO BALANCE THE NECESSARY REQUIREMENTS OF SPECIFICITY AND PARTICULARITY, UNDER RULE 9(F) OF FRCP TO ESTABLISH SUFFICIENCY OF THIS PLEADING, WITH THE REQUIREMENTS OF CONCISION AND DIRECTNESS UNDER RULE 8(e) OF FRCP, AII IN ACCORDANCE WITH RULE 11.

85) AND HUMBLY REQUEST THE COURT KEEP IN MIND THAT PLAINTIFF IS A PRO-SE LITIGANT AT BEST

DATED: APRIL 12, 2018
NEW YORK NY

RESPECTFULLY SUBMITTED,
MR. KEVIN WALKER
#75832-054, PRO SE
METROPOLITAN CORR. CENTER
150 PARK ROW
NEW YORK NY. 10007

CC: FILE
PRO-SE OFFICE

82) FURTHER EXTANT EVIDENCE AND ARGUMENTATION ELUCIDATING THE "PATTERN OF RACKETEERING ACTIVITY", AND INFORMATION WHICH WILL BE ACQUIRED IN THE PROCESS OF DISCOVERY, WILL ESTABLISH THE NECESSARY PREPONDERANCE OF EVIDENCE IF PLAINTIFF HAS NOT ALREADY DONE SO, AS IS REQUIRED BY THE COURT IN ACCORDANCE WITH THE FEDERAL RULES OF CIVIL PROCEDURES (FRCP).

83) IN PARTICULAR WITH REGARDS TO RULE 11 OF FRCP, PLAINTIFF AVERS THAT ALL STATEMENTS AND ALLEGATIONS ARE TRUE UPON INFORMATION, BELIEF, AND REASONABLE INVESTIGATION, AND FURTHER THAT THIS ACTION IS NOT BROUGHT WITH ANY PURPOSE TO HARASS OR DEFAME DEFENDANTS, AND FURTHER THAT ITS NOT OF ANY NATURE THAT COULD BE CALLED FRIVOLOUS.

OFFICE.

80) AN FINALLY, ANY FURTHER RELIEF OF WHATEVER KIND THAT THIS COURT ~~MAY~~ MAY DEEM SUITABLE, JUST OR APPROPRIATE TO PLAINTIFF. PLAINTIFF ALSO REQUEST OF THE COURT THE RIGHT TO AMEND AND CURE ANY DEFECTS OR ERRORS IN WHICH THIS COURT DEEMS NECESSARY.

## IX   DEMAND FOR JUDGEMEND AND TRIAL BY JURY

81) ON THE BASIS OF ALL THE FORGOING, PLAINTIFF DEMANDS JUDGEMENT FOR THE STATED RELIEF, IN TRIAL BY JURY.

## X   PLAINTIFFS AVERMENT REGARDING RULE 11, FRCP

THE COURT ITSELF, IN COMPENSATION
FOR WHATEVER RELIEF THE COURT
ITSELF MAY HAVE ACCORDED THE
PLAINTIFF; THIS; SINCE PLAINTIFF'S
INABILITY TO DEFEND HIMSELF OTHER-
WISE IS A DIRECT CONSEQUENCE
OF THE PLAINTIFF'S DESTITUTION
WHICH IS CAUSED BY THE UN
ABATED INSISTENCE ON A CLEAR
"PATTERN OF RACKETEERING ACTIVITY"
ENGAGED IN, WITHIN THE "ENTERPRISE"
THAT INCLUDES KEEPING PLAINTIFF
INCARCERATED.

19) ALL PLAINTIFF'S COST IN THIS
LITIGATION, AND AS WELL, JUST COM-
PENSATION FOR THE ONEROUS WORK
AND EFFORT THAT HAS BEEN FORCED
UNDER DURESS, UPON PLAINTIFF BY
DEFENDANTS ACTIONS; PLAINTIFF REQUEST
OF THE COURT THAT ALL COST OF THE
NECESSARY TOOLS REQUIRED TO ACT
AS AN ATTORNEY UNDER PRO-SE STATUS
BE PAID FOR BY DEFENDANTS AND THEIR

75) COMPENSATORY DAMAGES IN THE FORM OF $25,000,000 MILLION FOR DIRECT AND PROXIMATE CAUSE, DAMAGE TO LIFE, LIMB, WELL-BEING AND FINANCES OF PLAINTIFF STEMMING FROM DEFENDANTS ACTIONS, AS WILL BE OUTLINED AND APPORTIONED, WHICH DAMAGES WILL HAVE SUCH LIFELONG IRREPARABLE EFFECTS THAT WILL PERMANENTLY PROHIBIT PLAINTIFF FROM BEING SELF-SUPPORTING, AND PRODUCTIVE INDIVIDUAL.

76) PUNITIVE DAMAGES IN THE FORM OF $25,000,000 MILLION

77) A DECLARATORY JUDGEMENT PURSUANT TO 28 USC 2202, THAT THE ACTION OF THE DEFENDANTS VIOLATED THE CONSTITUTIONAL RIGHTS OF PLAINTIFF.

78) ANY DAMAGES, PLUS INTEREST THAT MAY BE PAYABLE AND DUE, TO

FULNESS AND RELIABILITY WITH
CREDITABLE AND RELIABLE PROOF,
A JUDGE IS TO REVIEW THE PRO-
CEEDINGS IN CAMERA TO MAKE
DETERMINATION IF DEFENSE COUNSEL
IS ALLOWED TO VIEW "PROFFERS"
SESSION AND USED FOR IMPEACH-
MENT PURPOSES.

74) THAT DEFENDANTS AND THEIR
OFFICE RELINQUISH THE "SOLE" ENTITY
TO EVALUATE THE QUALITY OF ANY
COOPERATORS ALLEGED "SUBSTANTIAL
ASSISTANCE" MOTION (ie., 5K1.1, Rule
35(b), 18 USC § 3553(e)) THAT DECISION
SHOULD BE SUBJECTED TO REVIEW
ONCE CHALLENGED BY DEFENSE COUNSEL
IN A FACTUAL SHOWING THAT THE
COOPERATOR HAS INDEED LIED, HIS STORY
WAS INCOMPLETE, HAS COMMITTED FURTHER
CRIMES, GAVE FALSE, MISLEADING OR
INCOMPLETE INFORMATION OR INACCURATE
INFORMATION.

5 YEARS, UNTIL THE "NEW LEGAL PROCEDURES" BECOMES A PATTERN OF PRACTICE FOR THE DEFENDANTS AND THEIR OFFICE

73) TEMPORARY RESTRAINING ORDER (TRO), ON ALL PROFFERS WITH THE DEFENDANTS AND ITS OFFICE, UNTIL "NEW PROCEDURES" ON HOW "PROFFERS" ARE TO BE CONDUCTED IS ISSUED. IN THE LAW OF THIS LAND, THE GRAND JURY PROCEEDINGS AND A JURY PROCEEDINGS UPON DE-CIDING A CASE ON TRIAL, IS THE ONLY THING FASHIONED BY LAW TO HAVE SUCH SECRECY, DEFENDANTS AND THERE OFFICE HAS BEEN CONDUCTING THE ILLEGAL ASPECT OF THE "PROFFERS" WITH TOTAL SECRECY. THE SECRECY ASPECT IS TO END.

THAT ALL "PROFFERS" SESSIONS ARE TO BE VIDEO/AUDIO RECORDED AND SEALED SO IF DEFENSE COUNSEL CHALLENGES ANY COOPERATORS TRUTH—

EXPLICITY PROHIBIT ACTS), FOR EACH
DEFENDANT IS EXPLAINED IN STATEMENT
OF FACTS

## VII    RELIEF SOUGHT:

71) TEMPORARY RESTRAINING ORDER
(TRO) ON All COOPERATION AGREEMENTS
AND USE OF RULE 35(b) AND 18 USC
$ 3553(e), UNTIl THE U.S. ATTORNEYS
OFFICE, FEDERAL DEFENDERS OFFICE,
AND LAW FIRM OF PLAINTIFFS CHOICE,
ALONG WITH THE ACLU, AND A
REPRESENTIVE OF THE U.S SENTENCING
COMMISSION, COLLECTLY SIT DOWN
AND OUTLINE "NEW PROCEDURES" THAT
WIll BE MANDATED TO BE FOllOWED,
AND PENALITIES ATTACHED IF NOT
FOllOWED.

72) AN APPOINTMENT OF A SPECIAl
MASTERS TO OVERSEE AND OVERLOOK INTO
THE "NEW PROCEDURES" FOR THE NEXT

THE DEFENDANTS AND ITS OFFICE, AND ALSO IS A CONTINUATION OF DAMAGES AND INJURIES TO PLAINTIFF AND ALL THOSE AFFECTED.

69) PLAINTIFF FURTHER ALLEGED THAT THIS PATTERN CONTAINS A SEQUENCE OF EVENTS, OVER YEARS (31 YRS TO BE EXACT), THAT ALL HAVE THE SAME AND COMMON PURPOSE, AND THAT PURPOSE IS TO OBTAIN CONVICTIONS AT ALL COST, AND NOT SEEK JUSTICE, BY WAY OF EGREGIOUSLY DELIBERATE, CALCULATED AND MALICIOUS BRIBING AND EXTORTING, WITH TORTUROUS INTERFERENCING OF THE LEGAL AND ADMINISTRATIVE DUE PROCESS, WHICH IS A " PATTERN OF RACKETEERING ACTIVITY".

70) THE PARTICULAR COMPLAINTS OF RICO, HOBBS ACT AND BIVENS ACTS, (i.e., INSTANCES OF PREDICATE AND

DAMAGES.

67) PLAINTIFF ALLEGES THAT THE "PREDICATE ACTS", UNDER BOTH RICO AND HOBBS ACT, DO ESTABLISH A PATTERN OF RACKETEERING AND BRIBERY AS WELL AS EXTORTION, BY DEFENDANTS WHICH CONSTITUTE "ENTERPRISE".

68) A "PATTERN OF RACKETEERING ACTIVITY", IS DEFINED TO BE A PATTERN THAT HAS BOTH CONTINUITY AND RE-LATIONSHIP, THIS PATTERN BEGAN FOR PLAINTIFF ON MARCH AND MAY 2016, BUT FOR DEFENDANTS IT STARTED NOV. 1987, AND IT CONTINUES TO THIS DAY AND THERE IS CERTAINLY A THREAT THAT SUCH ACTIVITY WILL CONTINUE INTO THE FUTURE. THE AC-TIVITY OF RACKETEERING CONTINUE, AND THERE IS NO EVIDENCE AVAILABLE TO PLAINTIFF TO EVEN SUGGEST DIS-CONTINUANCE OF THIS PATTERN BY

TO FRCP RULE 8, AND NOT TO
BURDEN THE COURT, THE OUTLINE
IN THIS COMPLAINT CONTAINS
ONLY STATEMENT OF FACTS AND
AT BEST MEMORANDUM OF LAW,
TOGETHER WITH REFERENCES TO
EXHIBITS THAT ARE NOT ATTACHED
DUE TO COURT ORDER IN BOTH
CASES (16CR 567(JSR), AND 16CR 327 (RA))
THE COURT WILL HAVE TO VIEW
THEM INDEPENDANTLY. HOWEVER, THE
SMALL PREDICATE ACTS THAT ARE
REQUIRED UNDER RICO AND HOBBS
ACTS IN ORDER TO VOID THE
ANTICIPATED MOTION TO DISMISS
ON BASIS OF INSUBSTANTIALLY.
REFERENCES TO SUPPORTING EXHIBITS
AND DOCUMENTS SUBMITTED, NOW
ARE ONLY A DEMOSTRATION TO THE
COURT THAT THIS COMPLAINT HAS
GENUINE MERIT, IS NOT AN
EXERCISE IN LEGAL SOPHISTRY,
AND MORE IMPORTANTLY THAT IT
IS SUBSTANTIVE IN LAW AND IN

3553(e)) IN AN UNLAWFUL MANNER FOR PURPOSES OF OBTAINING CONVICTIONS;

4) FURTHERANCE OF THE RICO THEY ARE COMMITTING FALSE ARREST, UNREASONABLE SEARCHES, OBSTRUCTION OF JUSTICE, INFLUENCING WITNESSES TO PERJURE THEMSELVES, NOT CORRECTING THE PERJURED TESTIMONY, BRIBING AND EXTORTING WITNESSES FOR THEIR TESTIMONY DURING THE COURSE OF ITS GENUINE PATTERN OF RACKETEERING ACTIVITIES.

AND PLAINTIFF SEEK RELIEF FROM THE COURT FOR;

CONTINUING VIOLATIONS, AND FOR PROXIMATE DAMAGES CAUSE THEREBY OUTLINED BELOW. IN ORDER TO CONFORM

VII.   AS AND FOR CAUSE OF ACTION,
PLAINTI# HEREIN COMPLAIN
MORE SPECIFICALLY UPON U.S
CODE, COMMON LAW, AND CON-
STITUTION OF THE UNITED
STATES, AND OF DEFENDANTS;

1) CONSPIRACY TO VIOLATE
   AND VIOLATIONS OF;

   A) 18 USC § 1962 (c) (RICO)
      18 USC § 1951 (HOBBS ACT)

   AS WELL AS VIOLATIONS OF

   B) 42 USC 1983 (BIVENS ACT)

2) TORTUROUS INTERFERENCE
   WITH THE LEGAL AND ADMINI-
   STRATIVE DUE PROCESS,

3) USING WHAT WILL BE A
   LAWFUL INSTRUMENT (5K1.1,
   RULE 35(b), AND 18 USC

THE ERRORS, OR LIES FOR THAT MATTER
SEE UNITED STATES v JOSEPHBERG, 562
F.3D 478, 494 (2d Cir. 2009)
        ) 18 USC 201 ~~(b)(4)~~ (C)(2), THE STATUTE
PROHIBITS "WHOEVER" FROM GIVING "ANYTHING
OF VALUE TO ANY PERSON, FOR OR BECAUSE
OF THE TESTIMONY UNDER OATH... BY
SUCH PERSON AS A WITNESS UPON A
TRIAL... (SEE ALSO 18 USC 201 (b)(3)).

WHO HAD PERJURED HIMSELF NUMEROUS
OF TIMES, AND THE REASON A RULE 33
WAS GRANTED.

) THE DEFENDANTS HAS ENGAGED
IN WHAT IS KNOWN AS WIDE-SPREAD
PRACTICES OF OBSTRUCTION OF JUSTICE
BY WAY OF BRIBING AND EXTORTING
THE CO-OPERATOR OUT OF TESTIMONIES
THAT THEY KNOW ARE BLATANT LIES.
BRIBERY IS A FORM OF RACKETEERING
ACTIVITY THAT IS PROHIBITED, BUT IN
ORDER TO GET CONVICTIONS THE DEFEN-
DANTS ARE DELIBERATE IN THEIR EFFORTS
MY WAYS OF ADDING ADDITIONAL CHARGES
ON THE CO-OPERATORS TO GET THEM TO
TESTIFY AND TO TESTIFY FALSELY.

) IN PLAINTIFFS CASES AT BAR
EACH COOPERATOR TOLD THE DEFENDANTS
MULTIPLE STORIES (LIES) AND NONE OF
THE STORIES STAYED THE SAME, THESE
STORIES WAS TAILORED TO FIT THE DEFEN-
DANTS THEORY OF EVENTS, SO THE
DEFENDANTS WAS WELL-AWARE OF
THIS AND CHOOSE NOT TO CORRECT

WANT, THEY WANT HIS BROTHER KEVIN
WALKER WHO'S THE LEADER OF A ROBBERY
GANG", ETC... AND INDIVIDUAL-1 STATED
AT THE GRAND JURY SHE NEVER GAVE
DEFENDANT CHURLA ANY INFORMATION
OF THAT NATURE.

      ) WHEN A POLICE OFFICER CREATES
FALSE INFORMATION LIKELY TO INFLUENCE
A JUDGE OR JURY DECISION AND FORWARD
THAT INFORMATION TO PROSECUTORS, THE
ACCUSED  CONSTITUTIONAL RIGHTS TO A
FAIR TRIAL IS VIOLATED SEE Ricciti V
NYC TRANSIT AUTH, 124 F.3D 123, 130 (2d CIR.
1997)

      ) IT IS EVIDENT FROM THE EVIDENCE
THATS BEEN PRESENTED THAT THE OFFICERS
NEVER HAD PROBABLE CAUSE TO GET AN
ARREST WARRANT, IN THE CASE AT
TRIAL 40 SOMETHING WITNESSES TESTIFIED
AND NOT A SINGLE ONE TESTIFIED THAT
PLAINTIFF DID ANYTHING TO THEM, OR
THAT THEY SEEN PLAINTIFF BEFORE. THE
ONLY SINGLE WITNESS THAT PLACED ME
AS APART OF THIS CRIME WAS TYRONE
WALKER THE DEFENDANTS STAR WITNESS

UNDER NEW YORK LAW, THE ELEMENTS
OF A FALSE IMPRISONMENT CLAIM ARE
1) THE DEFENDANT INTENDED TO CONFINE
PLAINTIFF, 2) THE PLAINTIFF WAS CONSCIOUS
OF THE CONFINEMENT; 3) THE PLAINTIFF
DID NOT CONSENT TO THE CONFINEMENT
AND 4) THE CONFINEMENT WAS NOT
OTHERWISE PRIVILEGED. ALSO SEE HYPH
v JACOBS, 961 F.2D 359 (THE ELEMENTS
OF A CLAIM OF FALSE ARREST UNDER
1983/BIVENS ARE SUBSTANTIALLY
THE SAME AS ELEMENTS OF A FALSE
ARREST CLAIM UNDER NEW YORK LAW.
        ) IN PLAINTIFFS INITIAL CASE
AT BAR (16 CR 327 CRA)) THE DEFENDANTS
EXECUTED WARRANT WHAT WAS A FAULTY
ARREST WARRANT. THIS ARREST WARRANT
WAS BASED ON A LIE FROM DEFENDANT
CHURLA, AND WITHOUT THE LIE THE
WARRANT WOULD OF NEVER BEEN ISSUED.
DEFENDANT CHURLA NOT ONLY LIED
ABOUT THE PARTICULARS IN WHICH
HE STATED THAT "INDIVIDUAL-1 TOLD
HIM THAT TYROME IS NOT WHO THEY

n.9.; 60 LED 2D 824, 99 S. Ct 2248 (1979),
WONG SUN V UNITED STATES, 371 US 471,
479, 9 LED 2D 441, 83 S. Ct 407 (1963)
BRINEGAR V UNITED STATES, 338 US 160,
175-76, 93 LED 2D 1879, 69 S. Ct 1302 (1949)
       ) FIRST, UNDER NEW YORK LAW, WHILE
THE FAVORABLE TERMINATION OF JUDICAL
PROCEEDINGS IS AN ELEMENT OF A CLAIM
FOR MALICIOUS PROSECUTION ( SEE e.g.
BROUGHTON V STATE, 37 NY 2D AT 457,
373 NYS2D at 94 (ELEMENTS OF THE TORT
OF MALICIOUS PROSECUTION [INCLUDES] THE
TERMINATION OF THE PROCEEDING IN FAVOR
OF ACCUSED), IT IS NOT AN ELEMENT
OF A CLAIM FOR FALSE ARREST, (SEE
Id. AT 456, 373 NYS2D AT 93; SINGER
V FULTON COUNTY SHERIFF, 63 F.3D at 118
       ) THE COMMON LAW TORT OF FALSE
ARREST IS A SPECIES OF FALSE IMPRISON-
MENT... THIS CLAIM IS DISTINCT FROM
ONE OF MALICIOUS PROSECUTION, " EACH
PROTECTS A DIFFERENT PERSONAL INTEREST
AND IS COMPOSED OF DIFFERENT ELEMENTS,
[BROUGHTON V STATE, 37 NY 2D AT 456]

# POINT III

IN FURTHERANCE OF THIS
CONSPIRACY THEY ARE COM-
MITTING FALSE ARREST, UN-
REASONABLE SEARCHES, OB-
STRUCTION OF JUSTICE, IN-
FLUENCING WITNESSES TO
PERJURE THEMSELVES, EXTORT-
ING WITNESSES OUT OF THEIR
TESTIMONY BY ADDING AD-
DITIONAL CHARGES TO SECURE
THEIR PERJURIOUS TESTIMONIES
TO GET CONVICTIONS

)IT IS WELL SETTLED THAT PROBABLE
CAUSE TO ARREST EXISTS WHEN THE
OFFICERS HAVE KNOWLEDGE OR REASONABLE
TRUSTWORTHY INFORMATION OF FACTS AND
CIRCUMSTANCES THAT ARE SUFFICIENT TO
WARRANT A PERSON OF REASONABLE
CAUTION IN THE BELIEF THAT THE
PERSON TO BE ARRESTED HAS COMMITTED
OR IS COMMITTING A CRIME (See e.g.,
DUNAWAY v NEW YORK, 442 US 200, 208

'66) A WITNESS PERJURES HIM
SELF WHEN HE v GIVES FALSE TESTIMONY
CONCERNING A MATERIAL MATTER WITH
WILLFUL INTENT TO PROVIDE FALSE
TESTIMONY, AS DISTINGUISHED FROM
INCORRECT TESTIMONY, RESULTING
IN CONFUSION, MASTAKE OR FAULTY
MEMORY. UNITED STATES v MONTELEONE,
257 F.3D 210, 219 (2d CIR. 2001) ALSO
SEE; UNITED STATE v ZICHETTELLO,
208 F.3D 72, 102 (2d CIR. 2000)

AFFECT ON THE JUDGEMENT OF A JURY. (See UNITED STATES v AGURS, 427 US 97, 103, 96 S. CT 2392, 49 LED 2D 342 (1976); See, EICLIO v UNITED STATES, 405 US 150, 151, 153, 92 S.CT 763, 31 LED 2D 104 (1972); DRAKE v PORTUONDO, 553 F.3D 230, 240 (2D CIR 2009); PERKINS v LEFEVRE, 642 F.2D 37, 40 (2d CIR. 1981)

66) AND THE PROSECUTOR'S KNOWING USE OF PERJURED TESTI-MONY CAN VIOLATE THE DUE PROCESS CLAUSE EVEN IF IT ONLY UNDER-MINES A WITNESS CREDITABILITY SEE., NAPUE v ILLINOIS, 360 US 264, 269-70, 79 S.CT 1173, 3 LED 2D 1217 (1959) ("A LIE IS A LIE, NO MATTER WHAT ITS SUBJECT, AND IF IT IS IN ANYWAY RELEVANT TO THE CASE, THE GOVERNMENT HAS THE RESPON-SIBILITY AND DUTY TO CORRECT WHAT HE KNOWS TO BE FALSE AND TO ELICIT THE TRUTH") UNITED STATES v. CROMITE, 727 F.3D 194, 221-22 (2d CIR 2013),

AND NOT IN A illegal AND AR-
BITRARY MANNER JUST TO GET A
CONVICTION, BECAUSE EVERYTIME THE
DEFENDANTS AND OR ITS OFFICE
USES THESE LEGAL TOOLS illegal,
IT ~~TAKES~~ HARMS NOT ONLY THE
Alleged CRIMINAL DEFENDANTS ITS
AIMED AT, BUT IT HARMS THE
CRIMINAL JUSTICE SYSTEM AS A
WHOLE, AND STATES THAT "I CAN
GET AWAY WITH ANY CRIME, BUT
YOU CAN'T". THE CRIMINAL JUSTICE
SYSTEM IS DESIGNED TO PUNISH
THOSE WHO BREAK THE LAW. RATHER
ITS AN ORDINARY CITIZEN OR AN
INDIVIDUAL WHO TOOK AN OATH
OF OFFICE TO UPHOLD THE LAW. IT
BASICALLY APPLIES TO EVERYONE.

    (65) A CONVICTION OBTAINED BY
THE KNOWING USE OF PERJURED TESTIMONY
IS FUNDAMENTALLY UNFAIR, AND MUST
BE SET ASIDE IF THERE IS ANY
REASONABLE LIKELIHOOD THAT THE
FALSE TESTIMONY COULD HAVE AN

RACKETEERING HAS BEEN GOING ON
FOR 31 YEARS REPETITIOUSLY AND
FURTHER PREDICATE ACT OF SUCH
WILL OCCUR. PLAINTIFF CAN ASSURE
THAT OVER THE 31 YEARS OF THIS
RACKETEERING PATTERN, THE DEFENDANTS
HAS NOT ONLY TARGETED PLAINTIFF,
BUT OTHERS HAVE BEEN INJURED
BY THIS ILLEGAL ACTIVITY. PLAINTIFF
NOT ONLY SHOWED ONE (1) PREDICATE
ACT THAT THE DEFENDANTS ENGAGED
IN, BUT, HE SHOWED TWO (2), HE HAS
DEALT WITH PERSONALLY. ALL THESE
ACTS IN WHICH THE DEFENDANTS
AND THERE OFFICE HAS ENGAGED
IN, IS IN FURTHERANCE OF THE
"ENTERPRISE", IN WHICH THEY OPERATE
FROM (e.g., SEDIMA SPRL V IMREX CO.,
473 US 479).

64) 5K1.1 LETTERS, RULE 35
(b), AND 18 USC § 3553(e), ARE All
LEGAL STATUTES AND APPLICATIONS.
THE APPLICATION OF EACH STATUTE
SHOULD BE USED IN A  LEGAL MANNER

PATTERN AND ACTIVITY WITHIN 10
YEARS PLAINTIFF KNOWS THIS ACTIVITY
POSE A GREAT THREAT OF CONTINUED
CRIMINAL ACTIVITY BY THESE DEFENDANTS
(SEE HJ Inc. v NW BELL TELL Co., 492
U.S 229 (1989)

62) PLAINTIFF'S TWO (2) CASES
IN WHICH THIS RACKETEERING ACTIVITY
DERIVED FROM IS NOT AN ISOLATED
INSTANCE, THIS HAS BEEN HAPPENING
SINCE 1987, WITH HUNDREDS IF NOT
THOUSANDS OF ALLEGED CRIMINAL
DEFENDANTS SUCH AS PLAINTIFF,
IS SUBJECTED TO THE OPEN-ENDED
AND ON-GOING SCHEME THAT
INCLUDES THE BRIBING AND EXTORTING
THIS WITNESSES FOR THEIR TESTIMONY
AND ALLOWING COOPERATORS TO PER-
JURE THEMSELVES WITHOUT CORRECTING
WHAT IS KNOWN PERJURY.

63) NOW, THIS IS SO WIDE-SPREAD
IN THE UNITED STATES ATTORNEY'S OFFICE
HERE IN THE SOUTHERN DISTRICT, ESPECIALLY
BY THE DEFENDANTS, THIS PATTERN OF

ligated by the Rules on Ethics, as well as ABA (American Bar Association) and Cannons on Duty and Function of a Prosecutor, plus, Defendants have a U.S. Attorney Manuel which instruct them to ethically follow Rules and Procedures. However, this is a wide-spread practice and pattern that has been going strong since its inception in 1987, and is still used to this day and will be used in the future.

61) Plaintiff has two (2) cases at bar in which this pattern and practice of Racketeering has been used with no regards, and it is used knowingly with one purpose and intent, thats to secure convictions, and the mentioned cases at bar are just two (2) predicate acts that the Defendants has engaged in during the course of this Racketeering

59) OF THIS COOPERATION AGREE-
MENT (A)(E)(F)(G), ARE ESSENTIAL
TO THE INTEGRITY OF THE AGREEMENT,
ONCE EITHER OF THE SUBSECTIONS
ARE BREACHED, IT IS THE DUTY OF
THE DEFENDANTS (All AUSA's IN THIS
SUIT) TO INVESTIGATE EACH ASPECT
OF THE AGREEMENT THAT HAS BEEN
BREACHED. AT THIS POINT BASIC
CONTRACT LAW SHOULD BE APPLIED.
THE OBLIGATION UNDER THIS AGREE-
MENT SHOULD BE MET. BUT, AGAIN,
THE DEFENDANTS WAS WELL AWARE
THAT EACH OF THEIR COOPERATORS
VIOLATED ONE (1) OR MORE OF THIS
PROVISION AND STILL ALLOWED THEIR
COOPERATORS TO TESTIFY TO THE
OPPOSITE OF WHAT WAS TOLD TO
THEM (DEFENDANTS).
    60) ON SERVAL OCCASIONS EACH
DEFENDANT (All AUSA's IN CAPTION) HAVE
AN OBLIGATION AS WELL AS A DUTY
TO ~~PRESERVE~~ PRESERVE THE INTEGRITY OF
THEIR OATH OF OFFICE, THEY ARE OB-

BEFORE THE GRAND JURY
AND AT ANY TRIAL AND
OTHER COURT PROCEEDINGS
WITH RESPECT TO ANY
MATTERS ABOUT WHICH THIS
OFFICE MAY REQUEST HIS
TESTIMONY.

F) SHALL BRING TO THIS
OFFICE'S ATTENTION ALL
CRIMES WHICH HE HAS
COMMITTED, AND ALL
ADMINISTRATIVE, CIVIL OR
CRIMINAL PROCEEDINGS;
INVESTIGATIONS; OR PRO-
SECUTIONS IN WHICH HE
HAS BEEN OR IS A
SUBJECT, TARGET; PARTY
OR WITNESS

G) SHALL COMMITT NO FURTHER
CRIMES WHATSOEVER...

IN PARTS, PARAGRAPH 10 STATES:

"IT IS UNDERSTOOD THAT THE
DEFENDANT (COOPERATOR)
A) SHALL TRUTHFULLY AND COMPLETELY
DISCLOSE ALL INFORMATION WITH
RESPECT TO THE ACTIVITIES OF
HIMSELF AND OTHERS CONCERNING
ALL MATTERS ABOUT WHICH
THIS OFFICE INQUIRES OF HIM,
WHICH INFORMATION CAN BE
USED FOR ANY PURPOSE;

B) SHALL COOPERATE FULLY WITH
THIS OFFICE, THE BUREAU OF
ALCOHOL, TABACCO, FIREARMS
AND EXPLOSIVES, AND THE
NEW YORK CITY POLICE DEPART-
MENT AND ANY OTHER LAW
ENFORCEMENT AGENCY DESIGNED
BY THIS OFFICE

SAME PARAGRAPH (10)
        E) SHALL TRUTHFULLY TESTIFY

DEFENDANTS TO THOROUGHLY INVESTIGATE AND REQUEST THAT PLAINTIFFS ATTORNEY SEEK RULE 29 AND 33 RESPECTIVELY. All THIS CAME ABOUT WHEN THESE OTHER ALLEGED CO-CON SPIRATORS NAMELY MELVIN WALKER TOLD DEFENDANTS THE OPPOSITE OF WHAT TYROME WALKER STATED, THEN THE DEFENDANTS CROSS-REFERENCE EVERYTHING AND REALIZED THEY ALLOWED TYROME WALKER TO PERJURE HIMSELF, AND THEY WAS WELL-AWARE BEFORE HAND, BUT TURNED A BLIND EYE SO THAT THEY COULD GET A CONVICTION. (SEE UNITED STATES V HOFFENBERG, 908 F. SUPP 1265 (SDNY 1995)

58) NOW, THIS LINES UP WITH ANOTHER AGREEMENT CALLED "THE COOPERATION AGREEMENT", WHICH SET OUT AND EXPLAIN IN EXPLICIT DETAILS ITS TERMS TO BE FOLLOWED. FOR THE CONVENIENCE OF THE COURT, PLAINTIFF WILL ELABORATE ON THE AGREEMENT

SAYING " FUCK THE POLICE, I TOLD
YOU TO GET MY PHONE", AND HIS
WIFE SAYING " I DID GET IT, AND
THE AGENT TOLD ME TO GIVE IT
TO THEM OR I'll BE ARRESTED (SEE
EXHIBIT "  " TYROME WALKER TRULINKS
CAll AT MDC FEB 12. 2015 TO FEB 17
2015).

    57) All OF THIS WAS SUPPOSE
TO BE THOROUGHLY INVESTIGATED
BEFORE AllOWING HIM TO GET ON
A STAND AT A TRIAL. THEN
HE TOLD THEM THAT HE WAS ONLY
AT SOME OF THESE AllEGED
ROBBERIES AND THAT PlAINTIFF
WAS THE MASTERMIND THE ROBBERIES
AND THEN NAMED SERVAL OTHER
AllEGED CO-CONSPIRACTORS. WHO
WAS ARRESTED AND IMMEDIATELY
SEEKED TO HELP THE DEFENDANTS
BY TEllING THAT TYROME WALKER
PARTICIPATED IN MORE AllEGED ROBBERIES
AND THAT THE PHONE WAS NEVER
PlAINTIFFS IN ORDER FOR THE

PLAINTIFFS TWO (2) CASES (16 CR 567 (JSR), AND 16 CR 327 (RA) THE CO-OPERATORS DID EXACTLY THAT, THEY FASHIONED THEIR STORIES TO THE DEFENDANTS LIKING. EVEN AFTER DEFENDANTS KNEW THE CO-OPERATORS STORY CHANGE (SERVAL TIMES). ONE COOPERATOR TOLD DEFENDANTS (ALL AUSA's ON CASE 16 CR 567 JSR) THAT HIS PHONE WAS PLAINTIFFS PHONE SPECIFICALLY AND AT TIMES OF THESE ALLEGED CRIMES EXECUTIVELY. NOW, THE DEFENDANTS (McCREADY, McLEOD, ESTES, KRAMER, CHURLA, LONERGAN) HAD OPPORTUNITIES TO FOLLOW-UP AND TO MAKE SURE THAT WHAT THIS COOPERATOR (TYROME WALKER) TOLD THEM WAS SOUND AND RELIABLE. EVEN THOUGH THESE DEFENDANTS KNEW TYROME WALKER'S PHONE CON-VERSATIONS THAT HIS PHONE WAS A KEY ELEMENT, AND ON THESE PHONE CALLS HE CAN BE HEARD

OFFICE HAS BEEN APPLYING THESE PRACTICES SINCE 1987 (WHEN 5K1. LETTER WENT INTO EFFECT). PLAINTIFF HAS BECOME A VICTIM OF THIS UNETHICAL SCHEME THATS NOT DESIGNED TO FUNCTION IN THE FASHION THAT THE DEFENDANTS ARE USING IT. HOWEVER, THE PRACTICE AND CONDITIONING OF THE USE OF IT IN THIS MANNER, TAKES IT FROM A LAWFUL ASPECT TO AN UNLAWFUL USE JUST TO OBTAIN CONVICTIONS.

56) IN PLAINTIFF'S TWO (2) CASES AT BAR IN WHICH THIS ILLEGAL METHOD WAS USED REPEATEDLY, IN JUDGE RAKOFF'S CASE (16 CR 567 JSR) THE ONLY WITNESS AGAINST PLAINTIFF WAS TWO (2) CO-OPERATORS WHO WAS CONDITIONED THROUGH WAS IS KNOWN AS "COOPERATOR TRIAL PREPARATION" BY THE DEFENDANTS (AUSAS) TO FASHION THEIR STORIES TO FIT THE LEGAL RAMIFICATIONS OF THE CHARGES AND TO HE IN DOING SO. IN

ALL PARTS AND ELEMENTS, FULLY CARRIED OUT, THEN IT GOES ON TO SAY, RELIABILITY OF ANY INFORMATION (i.e., RELIABLE, TRUST-WORTHY — BEING ABLE TO BE TRUSTED OR RELIED ON). WHEN THESE ESSENTIAL ELEMENTS ARE NOT FOLLOWED TO THE LETTER, CAN DEFENDANTS (ALL AUSA IN THIS CASE) OVERLOOK THESE KEY ELEMENTS? NO! AND TO DO SO WILL ONLY SHOW THAT THE TRUTH OF A MATTER THATS BEFORE THE COURT IS IRREVELANT AND THE ONLY ASPECT DEFENDANTS ARE CONCERNED WITH IS GETTING A CONVICTION.

54) WHEN THE INFORMATION PROVIDED BY THE COOPERATORS IS NEITHER PROMPT, COMPLETE, NOR WHOLLY ACCURATE, AND THE EVIDENCE SUG-GEST HIS LEVEL OF CULPABILITY WAS GREATER THEN HIS TESTIMONY SUPPLIED, U.S. v Calle, 796 F. Supp 853 (1992) ARE THE DEFENDANTS ALLOWED TO OVERLOOK THE LIES, INCOMPLETENESS?

55) THE DEFENDANT AND ITS

OUT CRIME AND THE ALLEGED CRIMINALS ASSOCIATED WITH IT. HOWEVER, THIS TOOL HAS BEEN USED TO OBTAIN CONVICTIONS. IN PLAINTIFF'S CASE THE DEFENDANT HAS USED IT TWICE (2) (IN 16 CR 567 (JSR), AND IN 16 CR 327 (RA)).

52) THE 5KI.1 SUBSTANTIAL ASSISTANCE ("HEREIN ""5KI LETTER") HAS (5) POINTS OF LAW TO THIS AGREEMENT. POINT NUMBER (3) AND (4) STATES IN SUBSTANCE:

(3) THE TRUTHFULNESS, COMPLETENESS AND RELIABILITY OF ANY INFORMATION OR TESTIMONY PROVIDED BY THE DEFENDANT ("COOPERATOR")

(4) THE NATURE AND THE EXTENT OF THE DEFENDANTS ASSISTANCE

53) WHAT NUMBER (3) STATES IS THE COOPERATOR HAS TO TELL THE TRUTH FROM BEGINING TO END, AND THEN ITS FOLLOWED-UP WITH COMPLETENESS (HAVING

2) THE TRUTHFULNESS, COM-
PLETENESS AND RELIABILITY
OF ANY INFORMATION OR
TESTIMONY PROVIDED BY
THE DEFENDANT;

3) THE NATURE AND THE
EXTENT OF THE DEFENDANTS
ASSISTANCE;

4) ANY INJURY SUFFERED,
OR ANY DANGER OR
RISK OF INJURY TO THE
DEFENDANT OR HIS FAMILY
RESULTING FROM HIS ASSIST-
ANCE;

5) THE TIMELINESS OF THE
DEFENDANTS ASSISTANCE.

5i) NOW, THIS TOOL HAS BEEN USED
BY THE DEFENDANTS (All AUSA's) AND
THERE OFFICE HUNDREDS, IF NOT THOUSAND
OF TIMES IN THE GUISE OF FRETTING

# 5K1.1 Substantial Assistance to Authorities (Policy Statement)

50) UPON MOTION OF THE GOVERNMENT STATING THAT THE DEFENDANT HAS PROVIDED SUBSTANTIAL ASSISTANCE IN THE INVESTIGATION OR PROSECUTION OF ANOTHER PERSON WHO HAS COMMITTED AN OFFENSE, THE COURT MAY DEPART FROM THE GUIDELINES:

A) THE APPROPRIATE REDUCTION SHALL BE DETERMINED BY THE COURT FOR REASONS STATED THAT MAY INCLUDE, BUT ARE NOT LIMITED TO CONSIDERATION OF THE FOLLOWING;

1) THE COURTS EVALUATION OF THE SIGNIFICANCE AND USEFULNESS OF THE DEFENDANT ASSISTANCE, TAKING INTO CONSIDERATION THE GOVERNMENTS EVALUATION OF THE ASSISTANCE RENDERED;

# Point II

IN THE COURSE OF THE RICO, THEY ARE USING WHAT WILL OTHERWISE BE A LAWFUL IN-STRUMENT (i.e., 5K1.i LETTER, RULE 35(b) AND 18 USC § 3553 (e)), IN AN UNLAWFUL MANNER, IN DOING SO, THEY ARE A "ENTERPRISE" COMMITTING CRIMINAL ACTS FOR THE PURPOSE OF OBTAINING CONVICTIONS,

48) ON NOVEMBER 1. 1987, THE UNITED STATES CODE ANNOTATED, FEDERAL SENTENCING GUIDELINES, CHAPTER FIVE: DETERMING THE SENTENCE PART K; DEPARTURES 1) SUBSTANTIAL ASSISTANCE TO AUTHORITIES BECAME LAW.

49) THE LAW THAT WENT INTO EFFECT ON NOVEMBER 1, 1987, BECAME KNOWN AS THE "5K1.1 LETTER", AND IT'S AS FOLLOWED.

TEACHER, FOR GOOD OR ILL, IT
TEACHES THE WHOLE OF THE PEOPLE
BY ITS EXAMPLES. CRIME IS CONTAGIOUS,
IF THE GOVERNMENT BECOMES LAW
BREAKERS, IT BREEDS CONTEMPT
FOR THE LAW; IT INVITES EVERY
MAN TO BECOME A LAW UNTO HIM-
SELF, IT WILL INVITE ANARCHY.
TO DECLARE THAT IN THE ADMINI-
STRATION OF CRIMINAL LAW THE
END JUSTIFIES THE MEANS, IS
TO DECLARE, THAT THE GOVERNMENT
(DEFENDANTS) MAY COMMITT CRIMES
IN ORDER TO SECURE THE CONVICTION
WOULD BRING TERRIBLE RETRIBUTION...
OLMSTEAD v UNITED STATES, 277 US 438,
48 S.CT 564 ( US 6/4/1928)

POINT I

THE TORTUROUS INTERFERENCE
WITH THE LEGAL AND ADMINI-
STRATIVE DUE PROCESS OF THE
CRIMINAL JUSTICE SYSTEM,
GENERALLY AND SPECIFICALLY,
THE HARM OF KEVIN WALKER
BY INCENTIVELY HAVING OFFICERS/
AGENTS AND COOPERATING
WITNESSES PERJURE THEM
SELVES TO GET A CONVICTION

) DECENCY, SECURITY, AND LIBERTY
ALIKE DEMANDS THAT GOVERNMENT OFFICIALS
(DEFENDANTS) SHALL BE SUBJECTED TO
THE SAME RULES OF CONDUCT, IN FACT,
THE GOVERNMENT (DEFENDANTS) IS HELD
TO A MUCH HIGHER STANDARD THAN
THOSE OF NORMAL CITIZENS. IN A
GOVERNMENT OF LAWS, EXISTENCE OF
THE GOVERNMENT WILL BE IMPERILED
IF IT FAILS TO OBSERVE THE LAW
SCRUPULOUSLY. OUR GOVERNMENT IS
THE POTENT, THE OMNIPRESENT

WAY OF ADDING ADDITIONAL
CHARGES TO SECURE THEIR
PERJURIOUS TESTIMONIES
TO GET CONVICTIONS.

GET A CONVICTION.

2. IN THE COURSE OF THE
RICO, THEY ARE USING
WHAT WILL OTHERWISE
BE A LAWFUL INSTRUMENT
(i.e. 5K1.1 LETTER, RULE
35(b) AND 18 USC 3553(e))
IN AN UNLAWFUL MANNER.
IN DOING SO, THEY ARE A
"ENTERPRISE" COMMITTING
CRIMINAL CRIMES FOR THE
PURPOSE OF OBTAINING CONVICTIONS;

3. IN FURTHERANCE OF THIS
CONSPIRACY THEY ARE
COMMITTING FALSE ARREST,
UNREASONABLE SEARCHES,
OBSTRUCTION OF JUSTICE,
INFLUENCING WITNESSES, TO
PERJURE THEMSELVES, BRIBING
WITNESSES TO PERJURE THEMSELVES,
EXTORTING WITNESSES OUT
OF THE TESTIMONIES BY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MR. KEVIN WALKER,                                    MEMORANDUM OF
                        PLAINTIFF                    LAW IN SUPPORT
        - VS -                                       OF RICO

_____

        THE DEFENDANT IN THE ABOVE –
ENTITLED ACTION, MR. KEVIN WALKER
WILL PRESENT MEMORANDUM OF LAW
IN SUPPORT OF RICO TO SHOW THIS
COURT THE FOLLOWING:

        1. THE TORTUROUS INTERFERENCE
           WITH THE LEGAL AND ADMINI-
           STRATIVE DUE PROCESS OF THE
           CRIMINAL JUSTICE SYSTEM,
           GENERALLY AND SPECIFICALLY
           THE HARMING OF MR. KEVIN
           WALKER, BY INCENTIVELY
           HAVING OFFICERS/AGENTS
           AND CO-OPERATING WITNESSES
           PERJURE THEMSELVES TO

CORROBORATED ANYTHING THAT WAS TOLD TO THEM INDEPENDANTLY.

46) DEFENDANT KEITH SMITH WAS THE ONLY DEFENDANT TO SEARCH PLAINTIFF AND REMOVE THE WALLET OUT OF HIS SWEAT PANTS POCKET AND NOW ALLEGES THAT HE DOES NOT REMEMBER ANY THING ABOUT THE WALLET. IN FACT NONE OF THE DEFENDANTS THAT PARTICIPATED IN THE ARREST ON MARCH 30. 2016 NO WHERE PLAINTIFF WALLET CAME FROM (SEE EXHIBIT " " SUPPRESSION HEARING). BUT DEFENDANT SMITH IS ALLOWING DEFENDANTS BECK AND St. HILAIRE TO TELL HIM THAT HE FOUND THE PHONES IN PLAINTIFF'S POCKET (2 iPHONES) THIS IS TO AVOID AND UN-REASONABLE SEARCH ASPECT IN WHAT TOOK PLACE.

RODNEY SHIRLEY AND KYEll CLAY EACH
ONE OF THESE CO-OPERATORS WAS
THREATEN WITH ADDITIONAL CHARGES
AND GIVEN THOSE CHARGES WITH
THE GUISE OF THEM BEING RELEASED
UNDER 5K1.1 AND RULE 35 Ⓑ) Dos AS
LONG AS THEY TESTIFY ( DEFENDANTS
DO NOT CARE IFS ITS TRUTHFUl, AS
LONG AS THEY SECURE A CONVICTION).
    15) THEN YOU HAVE DEFENDANT
CHURLA WHO FALSIFIED AND AFFIDAVIT
STATING THAT BIENAH JENKINS TOLD
HER THAT PLAINTIFF WAS THE LEADER
OF A ROBBERY GANG ( SEE EXHIBIT " "
AFFIDAVIT OF DANIel CHURLA) IN WHICH
BIENAH JENKINS TESTIFIED AT A
GRAND JURY IN OPPOSITION OF WHAT
DEFENDANT CHURLA AFFIRMED. ( SEE
EXHIBIT " " BIENAH JENKINS GRAND
JURY) DEFENDANT CHURLA AND MCCREADY
WAS APART OF A LOT OF TYROME WALKERS
INITIAL CASE THAT WAS THROWN OUT
AND HIS PROFFERS ONCE HE BECAME
A CO-OPERATOR. AND NEVER ONCE

43) NOW, DEFENDANTS ESTES, KRAMER, McLEOD, AND BALSAMELLO, ARE All BANKING ON MELVIN WALKER BEING TRUTHFUL AND HONESTY (PLAINTIFF CAN GUARANTEE THAT THAT ASPECT WILL BE PROVEN OTHERWISE).

44) DURING THE COURSE OF THIS All THE FOLLOWING DEFENDANTS ARE ENGAGING IN ALLOWING PERJURED TESTIMONIES TO STAND AND COMMITTING WHAT IS OTHERWISE KNOW AS BLACK MAIL AND EXTORTION IN EFFORTS TO GET PERJURIOUS TESTIMONIES AND SEAL CONVICTIONS ON PLAINTIFF. TYROME WALKER WAS BLACK MAILED AND EXTORTED OUT OF HIS CO-OPERATION AND TESTIMONY DEFENDANTS ESTES, KRAMER, McLEOD AND BALSAMELLO THREATEN TO ADD CHARGES IN WHICH WILL GUARANTEE ADDITIONAL TIME THAT HE WILL HAVE TO DO IN PRISON AND FOLLOWED THROUGH WITH THAT THREAT, BUT IT ALL WILL GO TO THE WASTE-SIDE IF YOU TESTIFY UNDER 5K1.1 IN WHICH HE DID. SAME FOR MELVIN WALKER,

OVERTURNED ON A RULE 33 MOTION
BECAUSE THEIR (DEFENDANTS) MAIN
WITNESS (TYROME WALKER) REPEATEDLY
LIED ON THE STAND ABOUT A PHONE
THAT WAS SUPPOSE TO BE PLAINTIFFS,
AND THEN COME TO FIND OUT 7-8
MONTHS LATER THAT THIS PHONE WAS
NEVER PLAINTIFFS PHONE AT ALL, PLAINTIFF
NEVER HAD IT AND OR USED IT FOR
THAT MATTER. NOW THIS CO-OPERATOR
STATED ON THE STAND THAT HE'S
TELLING THE TRUTH ETC... RODNEY SHIRLEY
AND KYELL CLAY TESTIFIED TO THE SAME
THING OF TELLING THE TRUTH UNDER
THE 5K1.1 AND RULE 35(B), BUT HAS
YET TO DO SO, THERE IS NEW LIES
THAT WAS FOUND AFTER THEIR TESTIMONIES
IN WHICH MISTRAL REQUEST WAS SOUGHT
FROM THE DEFENSE TEAM BUT REFUSED
BY THE JUDGE, BUT WILL CLEARLY SHOW
THE CONTINUOUS ALLOWANCE OF PERJURED
TESTIMONY TO OBTAIN CONVICTIONS. (SEE
EXHIBIT " " RULE 33 MOTION DEFENSE/
JUDGES ORDER).

CHURLA, McCREADY, ST. HILAIRE, BECK
ALLISON AND SMITH, INVESTIGATE AND
OR CORRODORATE (INDEPENDANTLY)
THE PARTICULARS OF BOTH CASES.
THESE DEFENDANTS RELIED ~~RELED~~
SOLEY ON THE CO-CONSPIRATORS/
CO-OPERATORS (IT IS NEVER HARD
FOR INDIVIDUALS WHO'S ALLEGED TO
BE APART OF ROBBERIES TO ~~GET~~ GIVE
INTRICATE DETAILS OF THE ROBBERY)
IN ALL OF THESE ALLEGED ROBBERIES
NOT ONE SINGLE PERSON BESIDES
THE CO-OPERATORS STATED THEY SEEN
PLAINTIFF AT THE ROBBERIES. PLAINTIFF
IS 6ᴴ AND 400 LBS, NOT EVEN A PASSER-
BYER HAS SEEN PLAINTIFF.

42.) THE GOVERNMENT/ DEFENDANTS
IS WELL-AWARE OF ALL THE LIES THAT
EACH CO-OPERATOR HAS TOLD AND
STILL ALLOWED THEM TO CHANGE THEIR
TESTIMONIES ON THE WITNESS STAND
AND NOT CORRECT THE LIES/PERJURY
TO SECURE CONVICTIONS ON PLAINTIFF
IN EACH CASE. ONE CASE WAS

Kyell CLAY WHO INFORMED PLAINTIFF
IN EXPLICIT DETAILS THAT THE DE-
FENDANTS PORTLOCK, REBOLD, ADAMS
ESTES, KRAMER, McLEOD, LENOW AND
ANY DEFENDANT I MISSED THAT
ATTENDED ANY PROFFER WITH CLAY.
THAT THEY (DEFENDANTS) WANTED
PLAINTIFF BAD. CLAY STATED TO
PLAINTIFF THAT THEY (DEFENDANTS)
TOLD ME TO SAY ITS YOU AND I
GO HOME. THEY (DEFENDANTS) SHOWED
ME All THE VIDEO'S WITH ME AND
IZZY (SHIRLEY), AND STATED IT HAD
TO BE SOMEONE BEHIND All THIS
GIVE US HIM AND YOU GO HOME.
THINK ABOUT IT, THINK ABOUT YOUR
KIDS. CLAY TOLD PLAINTIFF I'M NOT
DOING IT, I'M GOING TO TRIAL. I'M
NO SNITCH. THEN CLAY WAS REMOVED
FROM THE PEN WITH PLAINTIFF.

　　　41) AT NO TIME DID ANY OF
THESE DEFENDANTS PORTLOCK, REBOLD,
ADAMS, ESTES, KRAMER, McLEOD, BAL-
SAMELLO, LONERGAN, WAXMAN, OR

ON 151st GRAND CONCOURSE RIGHT THERE...
PLAINTIFF IN CONVEYING THIS COULD
NOT THINK OF THE AVENUE ACROSS
FROM SAM'S WHICH IS CEDAR LANE.
AND TO SHOW THE DEFENDANTS
BLATANT USE FOR PERJURIOUS TESTIMONY
(DEFENDANTS PORTLOCK, REBOLD, ADAMS)
AT THE TIME HAD TWO OTHER CO-OPERATORS
(MELVIN WALKER AND TYROME WALKER) WHO
ALSO WAS WORKING WITH PLAINTIFF AT
THE AFTERHOUR SPOT IN WHICH WAS
LOCATED DIRECTLY ACROSS THE STREET
FROM SAM'S. COULD OF CLEARLY PROFFER
MELVIN & TYROME ABOUT PLAINTIFF
WORKING AT SAM'S BUT LEFT THE
STORY UNCHECKED BECAUSE IT WAS
APPEALING TO THE EARS OF THE JURY
IN THEIR (DEFENDANTS) EYES. (PLEASE
REVIEW EXHIBIT "I" RODNEY SHIRLEY TESTIMONY
AND EXHIBIT "G" KEVIN WALKER INTERVIEW)
ALSO, EXHIBIT "J" KYEH CLAY INTERVIEW)

40) DURING ONE OF PLAINTIFFS
COURT DATES PLAINTIFF WAS PLACED IN
THE BULLPENS WITH ONE OF THE CO-OPERATORS

ARREST, HIS INTERVIEW VIDEO AND
At SERUAL PROFFERS IN WHICH At
SOME POINT EACH OF THE DEFENDANTS
(PORTLOCK, REBOLD, AdAMS, LENOW, BECK,
ST·HILAIRE) COACHED SHIRLEY ON
EXACTLY WHATS NEEDED TO BE
SAID IN FRONT OF JURY. FOR
INSTANCE SHIRLEY AND CLAY TESTIFIED
THAT PLAINTIFF TRIED TO HAVE THEM
ROBB A COUPLE AT HIS JOB (SAM'S CLUB)
PLAINTIFF NEVER WORKED AT SAM'S
CLUB, PLAINTIFF WORKED DIRECTLY
ACROSS THE STREET FROM SAM'S AT
A CLUB KNOWN AS THE "AFTERHOUR
SPOT" WHICH IS LOCATED ON 150TH – 151ST
CEDAR LANE. THE ONLY WAY THESE
CO-OPERATORS (CLAY & SHIRLEY) WAS
CONDITIONED TO ELABORATE ON THE
FICTITIOUS ROBBERY ATTEMPT AT PLAINTIFFS
JOB IS IN PLAINTIFF'S INTERVIEW PLAINTIFF
WAS ASKED WHERE HE WORKED IN THE
BRONX AND HIS RESPONSE WAS "I
USE TO WORK AT UM UM, ITS TWO CLUBS
THERE YOU GOT SAM'S, I USE TO WORK

NEVER CORRECTED THIS TESTIMONY.
THEY (DEFENDANTS) ALLOWED CLAY TO
TESTIFY CONTRARY TO WHATS ON
VIDEO. AND DEFENDANTS ST. HILAIRE
BECK, MCCREADY, AND SOMETIME
MCLEOD AND ESTES PARTICIPATED
IN THESE "PROFFERS" WHERE HE
WAS TUTORED INTO THE KIND OF
TESTIMONY THATS NEEDED TO GET
A CONVICTION.

   39) NOW, ALL THESE DEFENDANTS
AT ONE "PROFFER" OR ANOTHER HELPED
INTO FINE TUNING THE CO-OPERATORS
TESTIMONY. KYELL CLAY TESTIFIED IN
TWO OF PLAINTIFFS TRIAL AND NONE
OF THE DEFENDANTS, ESTES, MCLEOD
KRAMER, LONERGAN OR WAXMAN
CORRECTED KYELL CLAYS TESTIMONIES
AT EITHER TRIAL. EACH DEFENDANT
KNEW OF HIS INTERVIEW VIDEO. EACH
DEFENDANT KNEW HE CHANGED STORIES
MORE THAN (3) TIMES. THEN YOU
HAVE RODNEY SHIRLEY WHO TOLD
A BUNCH OF LIES IN HIS INITIAL

LIKE "AFTER THE FIREWORKS WE WALKED
BACK ACROSS THE BRIDGE TO HARLEM"
WHICH CLEARLY SHOWS THAT CLAY AND
SHIRLEY BOTH PLANNED THE STORIES
BEFORE HAND (SEE EXHIBIT "G" KYELL
CLAY INTERVIEW AND EXHIBIT "U" RODNEY
SHIRLEY INTERVIEW) DEFENDANT ST. HILAIRE
EACH INTERVIEW MADE SURE HE ALTERED
THERE VERSION WITH WHAT HE WANTED
THEM TO SAY, (HE MASKS AND PHOTO
LINE UP) ITS CLEAR IN THE VIDEO/
INTERVIEW TAPE.

    38) BOTH OF THE CO-OPERATORS
INTERVIEW CLEARLY SHOW THAT THE
DEFENDANT ST. HILAIRE AND SOMETIME
DEFENDANT BITER COERCED THEM AFTER
THEY (CLAY & SHIRLEY) LIED AND CHANGED
THERE STORIES. FOR INSTANCE, KYELL
CLAY STATED IN THE INTERVIEW VIDEO
THAT HE DID NOT KNOW DUDE (CLAIMENTS)
AT ALL, AND THAT HE NEVER SEEN
HIM AND OR HUNG OUT WITH HIM OR
TALKED TO HIM ON PHONE. NOW, THE
DEFENDANTS PORTLOCK, REBOLD OR ADAMS

31) NOW, PLAINTIFF GOING TO COURT FOR (2) SEPERATE HOBBS ACT INDICTMENTS. NOW, DEFENDANTS PORTLOCK AND REBULI ARE CONVERTING KYELL CLAY BEING THAT HE GAVE DEFENDANTS ST. HILAIRE AND BECK DIRECTIONS IN WHICH HE THINKS THEY SHOULD FOLLOW. EVEN AFTER THE DEFENDANT ST. HILAIRE IN THE INTERVIEW CONTINUED TO COERCED HIM INTO GIVING HIM THE STORY IN WHICH HE (DEFENDANT) WANTED TO HEAR. THIS DEFENDANT WAS SMART IN THE ASPECT OF KNOWING THAT THE INTERVIEW WAS RECORDED SO ANY THING THAT KYELL CLAY STATED WOULD BE USED, SO DEFENDANT ST. HILAIRE STRATEGICALLY ALTERED EACH ONE OF KYELL CLAY'S LIES BY SAYING THINGS LIKE "COME ON CLAY, DONT DO IT TO YOURSELF — YOU WAS DOING GOOD ETC. NOW, DURING THE COURSE OF THIS CLAY GAVE THEN (DEFENDANTS) 3 DIFFERENT VERSIONS OF A STORY. AT ONE POINT KYELL CLAY GAVE IDENTICAL STORIES LIKE RODNEY SHIRLEY STATED

IN FRONT OF ANOTHER JUDGE AND WAS TOLD ITS ONLY FOR ARRAIGNMENT PURPOSES. PLAINTIFF ASKED WOULD THIS CASE BE PUT IN FRONT OF THE JUDGE PLAINTIFF ALREADY HAD FOR HOBBS ACT AND WAS TOLD YES BY THE LAWYER.

36) NOW, PLAINTIFF IS BEING CHARGED WITH HOBBS ACT ROBBERIES FROM DEC. 2014 TO FEB 2015 ON ONE INDICTMENT AND FEB 2016 TO MARCH 2016 ON ANOTHER, EACH HOBBS ACT INDICTMENT SHOULD HAVE REFLECTED THE CONTINUATION OF THE OTHER AND ALL PLACED ON ONE INDICTMENT AND IN FRONT OF ONE JUDGE. PLAINTIFF INFORMED LAWYER ON SEVERAL OCASSION TO BRING THIS UP TO JUDGE, BUT TO NO AVAIL, GOVERNMENT WAS ABLE TO GET TWO (2) BITES OF THE APPLE. AND THE LAWYER WAS ABLE TO GET PAID FOR TWO (2) CASES AS OPPOSED TO GETTING PAID FOR ONE IF THE CASES WAS CONSOLIDATED TO ONE IN FRONT OF ONE JUDGE.